The Honorable Steve Higginbothom State Senator Post Office Box 242 Marianna, AR 72360
Dear Senator Higginbothom:
I am writing in response to your request for my opinion on the following questions, which you have submitted on behalf of a constituent:
 1. Voting by proxy when federal, state, or local funds and/or grant funds are being used, is it legal to use proxies to conduct voting on issues that will be used to determine the use and/or dispersing of those funds even when the entity's by-laws allow the use of proxies?
 2. Is it legal to use telephone polling of the Quorum Court Justices, then not having a public meeting on the issue to burden the County with debt, even if the new jobs are the main outcome, in reference to the public issue? In this situation there was no public notice, discussion or vote on this issue prior to the County Judge's enjoining [sic] with another county official to promise a definite dollar amount to recruit business to come to the area.
 3. Is the designation of a 501(c)(3) not-for-profit tax exempt status with the federal IRS all that is required to no longer be governed by or accountable to creating an entity of a city or county commission, authority, museums, chamber of commerce, and other committees?
RESPONSE
Question 1: Voting by proxy when federal, state, or local funds and/orgrant funds are being used, is it legal to use proxies to conduct votingon issues that will be used to determine the use and/or dispersing ofthose funds even when the entity's by-laws allow the use of proxies?
I am unable to answer this question in the abstract. Your constituent has apparently not indicated what sort of entity is the recipient of the public funds and what conditions, if any, the public grantor of the funds may have placed on their use. I can only opine that (a) if the grantee is organized under a statutory scheme that allows voting by proxy;[1] (b) if the grantee's charter documents do not prohibit voting by proxy on issues relating to the use of grant funds; and (c) if the grantor has not expressly prohibited the practice, voting by proxy under the circumstances you have recited would appear to be legal. However, I must stress that only a finder of fact acquainted with all of the circumstances could advise you whether this practice was permissible in any particular instance.
Question 2: Is it legal to use telephone polling of the Quorum CourtJustices, then not having a public meeting on the issue to burden theCounty with debt, even if the new jobs are the main outcome, in referenceto the public issue? In this situation there was no public notice,discussion or vote on this issue prior to the County Judge's enjoining[sic] with another county official to promise a definite dollar amount torecruit business to come to the area.
As discussed further below, as a general proposition, I believe that any official action by a quorum court undertaken by telephone poll would violate what is commonly referred to as the "open-meeting" requirement of the Arkansas Freedom of Information Act ("FOIA"), A.C.A. § 25-19-101
through -109 (Repl. 2002 Supp. 2003). However, before discussing the details of this requirement, I will note that I am unable from your factual recitation to determine precisely what circumstances gave rise to your constituent's question. It is unclear what action the quorum court undertook by telephone poll and what relationship the quorum court's actions had to the county judge's reported pledge of funding to some unidentified entity "to recruit business to come to the area." Again, I must stress that only a finder of fact familiar with all the underlying circumstances will be situated to advise you regarding the propriety of the various actors' conduct under the circumstances you have recited.
As noted above, if your constituent is concerned that the quorum court may have undertaken an impermissibly clandestine course of action, I can only opine generally that a quorum court, as a public entity, is subject to the open-meeting requirement of the FOIA, which at A.C.A. § 25-19-106
provides in pertinent part:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
 (b)(1) The time and place of each regular meeting shall be furnished to anyone who requests the information.
 (2) In the event of emergency or special meetings, the person calling the meeting shall notify the representatives of the newspapers, radio stations, and television stations, if any, located in the county in which the meeting is to be held and any news media located elsewhere that cover regular meetings of the governing body and that have requested to be so notified of emergency or special meetings of the time, place, and date of the meeting. Notification shall be made at least two (2) hours before the meeting takes place in order that the public shall have representatives at the meeting.
 (c)(1) Executive sessions will be permitted only for the purpose of considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee. The specific purpose of the executive session shall be announced in public before going into executive session.
* * *
 (3) Executive sessions must never be called for the purpose of defeating the reason or the spirit of this chapter.
 (4) No resolution, ordinance, rule, contract, regulation, or motion considered or arrived at in executive session will be legal unless, following the executive session, the public body reconvenes in public session and presents and votes on the resolution, ordinance, rule, contract, regulation, or motion.
In my opinion, any action undertaken by a quorum court based solely upon an unpublicized telephonic poll of the quorum court's members would run afoul of the FOIA's open-meeting requirement. As I noted in Ark. Op. Att'y Gen. No. 2003-206:
 The FOIA requires that all meetings of the governing bodies of all municipalities be held openly, and that notice of such meetings be given to the public. A.C.A. § 25-19-106. Moreover, the Arkansas Supreme Court has held that decision-making by means of a private "polling" of a governing body, without that process being made open to the public, violates the open meetings requirement. See Rehab Hosp. Serv. v. Delta-Hills Health Sys. Inc., 285 Ark. 397, 687 S.W.2d 840 (1985). It should be noted, however, that the court also held that actions taken by a body in violation of the FOIA will not be invalidated until the body is given an opportunity to rectify its actions. Id.
See also Harris v. City of Fort Smith, Arkansas Supreme Court Docket No. 04-485 (Nov. 4, 2004) (holding that one-on-one discussions by telephone or in person between the city administrator and board members to approve a proposed real-estate purchase violated the FOIA's open-meetings requirement).
In Ark. Op. Att'y Gen. No. 2000-111, one of my predecessors further offered the following analysis regarding the issue of telephonic polling:
 The wording of your question suggests . . . that the individual discussions in this instance serve as a vehicle for arriving at a board policy prior to the public meeting. I believe this is contrary to the spirit, if not the letter of the FOIA. Although the Arkansas Supreme Court has not addressed this precise issue, we know from its decision in Rehab Hospital Services Corp. v. Delta-Hills Health Systems Agency, Inc., 285 Ark. 397, 687 S.W.2d 840 (1985), that a "telephone poll" can violate the FOIA if the proper safeguards are not present. In Rehab Hospital, the executive director of Delta-Hills (an entity deemed subject to the FOIA) conducted a telephone poll of board members over a three-day period. The poll violated the FOIA, according to the court, because no notice was provided and there was no opportunity for the public and the press to hear the conversation. 285 Ark. at 400-401.
 I believe by analogy that a series of individual, private discussions between the superintendent and members of the school board, if held for the purpose of polling the members and thereby arriving at a board policy, violates the FOIA. Presumably, the court in Rehab Hospital
would also have found a violation had the executive director held individual, in-person discussions with each board member over the three-day period. Clearly, the FOIA open meeting requirement is subverted through this process.
With respect to the reported conduct by the county judge, I must note (a) that your description of the underlying facts is too abbreviated for me to address; and (b) that I am authorized only to discuss the law that a court might apply in addressing a particular issue, not to determine the facts to which that law would apply.
With respect to the scope of a county judge's authority, Ark. Const. amend. 55, § 3 provides:
 The County Judge, in addition to other powers and duties provided for by the Constitution and by law, shall preside over the Quorum Court without a vote but with the power of veto; authorize and approve disbursement of appropriated county funds; operate the system of county roads; administer ordinances enacted by the Quorum Court; have custody of county property; hire county employees, except those persons employed by other elected officials of the county.
The following statutory provisions may possibly also bear on your question:
 (2)(A) Executive. The executive divisions of a county government shall consist of:
 (i) The county judge, who shall perform the duties of the chief executive officer of the county as provided in Arkansas Constitution, Amendment 55, Section 3, and as implemented in this chapter and who shall preside over the quorum court without a vote but with the power of veto[.]
A.C.A. § 14-14-502 (Supp. 2003).
 (a) Arkansas Constitution, Amendment 55, § 3, established the following executive powers to be administered by the county judge:
 (1) To preside over the county quorum court, without a vote but with the power of veto;
 (2) To authorize and approve disbursement of appropriated county funds;
* * *
(4) To administer ordinances enacted by the quorum court[.]
A.C.A. § 14-14-1101 (Repl. 1998).
Under these provisions of law, a county judge is authorized to expend county funds in accordance with the directives of the quorum court in appropriating the funds.
As noted above, I can offer no opinion as to whether either the quorum court or the county judge acted in accordance with the legal principles set forth above. Either the county attorney or the prosecuting attorney would be authorized to investigate the factual background to determine whether any misconduct has occurred.
Question 3: Is the designation of a 501(c)(3) not-for-profit tax exemptstatus with the federal IRS all that is required to no longer be governedby or accountable to creating an entity of a city or county commission,authority, museums, chamber of commerce, and other committees?
I gather that your constituent is primarily concerned to know whether an entity that performs functions identical or similar to those performed by "an entity of a city or county commission, authority, museums, chamber of commerce, and other committees" can organize itself as a nonprofit corporation exempt from taxation under § 501(c)(3) of the Internal Revenue Code and thereby avoid governmental oversight of the sort that might be applicable to local governmental entities.
I should note at the outset that several of the organizations listed in the passage just quoted are themselves normally organized as tax-exempt, nonprofit corporations, not as outright governmental entities. See,e.g., A.C.A. § 13-5-201 (defining a "museum" as "an organized and permanent nonprofit institution with professional staff, essentially educational or esthetic in purpose"); Ark. Ops. Att'y Gen. Nos.2004-302, 2001-364 and 96-287 (acknowledging the condition of chambers of commerce as nonprofit corporations). These organizations would consequently appear to fall within the same category as the § 501(c)(3) tax-exempt corporation referenced in your request.
Having offered this observation, I must respectfully decline to answer your question, which is stated so broadly that I cannot offer a meaningful response. I believe only a finder of fact could properly address your question, and only then with respect to the particular conditions that apply to a particular nonprofit organization, on the one hand, and to a particular local governmental entity, on the other.
As a general proposition, a nonprofit corporation organized under Arkansas law will be subject to the terms of the legislation under which it is incorporated. See the Arkansas Nonprofit Corporation Act, A.C.A. §§4-28-201 through — 225 (Repl. 2001 Supp. 2003) and the Arkansas Nonprofit Corporation Act of 1993, A.C.A. § 4-33-101 through -1707 (Repl. 2001 Supp. 2003). The nonprofit corporation will also be subject to whatever restrictions on its activities are set forth in its charter corporate documents. The manifold commissions, authorities and committees of local government are likewise subject to a range of regulations individually applicable to each as set forth by statute and local ordinance. Only a finder of fact could determine how such regulations compare to those that would apply to a nonprofit corporation performing comparable tasks. I can only opine that so long as a nonprofit corporation complies with applicable laws and the conditions of its charter documents, the fact that its operations might resemble those of a governmental agency or commission would be immaterial.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] In this regard, I will note that both the Arkansas Nonprofit Corporation Act, A.C.A. §§ 4-28-201 through -225 (Repl. 2001 Supp. 2003) and the Arkansas Nonprofit Corporation Act of 1993, A.C.A. §4-33-101 through -1707 (Repl. 2001 Supp. 2003), authorize the practice of voting by proxy so long as a corporation's articles of incorporation or bylaws do not provide otherwise. A.C.A. § 4-28-212 and 4-33-724.